**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MOHAMMAD HILMI NASSIF & PARTNERS, owner of the tradename Trust World Wide Corp., | |
| Plaintiff, | |
| v. | No. 1:17-cv-02193 |
| | Judge Ketanji Brown Jackson |
| REPUBLIC OF IRAQ and MINISTRY OF INDUSTRY & MINERALS of the REPUBLIC OF IRAQ, | |
| Defendants. | |

---

**MOHAMMAD HILMI NASSIF & PARTNERS'**
**MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANTS**

---

Pursuant to Fed. R. Civ. P. 55 and 28 U.S.C. § 1608(e), Plaintiff Mohammad Hilmi Nassif & Partners, owner of the tradename Trust World Wide Corp. ("Plaintiff"), by and through its attorneys, KERKONIAN DAJANI LLC, hereby moves the court for the entry of Final Judgment by Default recognizing a foreign money judgment and entering final judgment against defendants Republic of Iraq ("Iraq") and the Ministry of Industry & Minerals – Republic of Iraq ("Ministry") (collectively "Defendants") in an amount that includes: (a) the principal amount of the foreign money judgment of $53,000,000 (FIFTY-THREE MILLION DOLLARS); (b) legal interest at the rate of 9.0% from April 15, 2010, as explicitly awarded in such foreign money judgment, which shall be no less than $40,940,910 (FORTY MILLION NINE HUNDRED FORTY THOUSAND

NINE HUNDRED AND TEN DOLLARS); (c) post-judgment interest from the date of this Court's

entry of final judgment; and (d) costs in the amount of $958.34.


Dated: November 19, 2018

MOHAMMAD HILMI NASSIF & PARTNERS,
owner of the tradename Trust World Wide Corp.,


/s/ Karnig S. Kerkonian

Karnig S. Kerkonian (D.D.C. Bar No. IL0040)
Elizabeth M. Al-Dajani (D.D.C. Bar No. IL0039)
KERKONIAN DAJANI LLC
1555 Sherman Avenue, Suite 344
Evanston, Illinois 60201
Tel. (312) 416-6180 Fax (312) 604-7815
kkerkonian@kerkoniandajani.com
ealdajani@kerkoniandajani.com

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

PROCEDURAL SUMMARY ---------------------------------------------------------------------------- 2

JURISDICTION AND VENUE ------------------------------------------------------------------------- 5

ARGUMENT ------------------------------------------------------------------------------------------- 12

I.   THE JORDANIAN JUDGMENT IS ENTITLED TO RECOGNITION ------------------------- 14

    A.  The Jordanian Judgment Satisfies the Act's Applicability Requirements ------------------ 14

    B.  There Is No Basis for Nonrecognition of the Jordanian Judgment -------------------------- 15

II.  PLAINTIFF IS ENTITLED TO A DEFAULT JUDGMENT IN THE
    FULL AMOUNT OF THE JORDANIAN JUDGMENT, INCLUDING
    LEGAL INTEREST ------------------------------------------------------------------------------------ 18

    A.  The Principal Amount of Damages Is Certain -------------------------------------------------- 19

    B.  The Evidentiary Basis for Legal Interest from April 15, 2010 Is Likewise
       Clear and the Amount of Legal Interest Is Easily Ascertainable ---------------------------- 20

    C.  Plaintiff Is Entitled to Post-Judgment Interest ----------------------------------------------- 22

    D.  Plaintiff Is Entitled to Costs -------------------------------------------------------------------- 23

CONCLUSION ----------------------------------------------------------------------------------------- 23

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>

*Ahmad v. Khalil,*
    2013 WL 3388641, at *6-7 (N.Y. Sup. Ct. 2013)-----------------------------------------------16

*Boland v. Providence Constr. Corp.,*
    304 F.R.D. 31, 36 (D.D.C. 2014) ------------------------------------------------------------------18

*Bricklayers & Trowel Trades Int'l Pension Fund v. Miami Valley Masonry, Inc.,*
    288 F. Supp. 3d 257, 259 (D.D.C. 2018)---------------------------------------------------------13

*Capital Ventures International v. Republic of Argentina,*
    552 F.3d 289, 294 (2nd Cir. 2009)------------------------------------------------------------- 6, 8

*CapitalKeys, LLC v. Democratic Republic of Congo,*
    278 F. Supp. 3d 265, 275 (D.D.C. 2017)---------------------------------------------------------19

*Commercial Bank of Kuwait v. Rafidain Bank,*
    15 F.3d 238, 242 (2d Cir. 1994) -------------------------------------------------------------------13

*Commissions Import Export S.A. v. Republic of Congo,*
    118 F. Supp. 3d 220, 224 (D.C. Cir. 2015) -----------------------------------------------------13

*Continental Transfert Technique Ltd. v. Fed. Gov't of Nigeria,*
    932 F. Supp. 2d 153, 164 (D.D.C. 2013)---------------------------------------------------------20

*De Csepel v. Republic of Hungary,*
    714 F.3d 591, 600-601 (D.C. Cir. 2013) ---------------------------------------------------- 10, 11

*Deptula v. Glosson,*
    No. CV 13-582 CRC/DAR, 2014 WL 12675256, at *4 (D.D.C. Oct. 23, 2014) ----------------23

*Dist. Cablevision Ltd. P'ship v. Bassin,*
    828 A.2d 714, 731 (D.C. 2003)--------------------------------------------------------------------22

*Fanning v. C&L Serv. Corp.,*
    297 F.R.D. 162, 166 (D.D.C. 2013) ---------------------------------------------------------------13

*G. Geerlings Export B.V. v. Van Hoekelen Greenhouses, Inc.,*
    2017 WL 2692001, (M.D. Penn. June 21, 2017) ------------------------------------------------21

*Gold Reserve Inc. v. Bolivarian Republic of Venezuela,*
    146 F. Supp. 3d 112, 127–28 (D.D.C. 2015) ----------------------------------------------------17

*Hill v. Republic of Iraq,*
    328 F.3d 680, 683 (D.C. Cir. 2003)----------------------------------------------------------13, 15, 18

*Hunt v. BP Expl. Co. (Libya),*
    492 F. Supp. 885, 901 (N.D. Tex. 1980)-------------------------------------------------------20

*Ingersoll Milling Machine Co., v. Granger,*
    833 F.2d 680, 687-8 (7th Cir. 1987)--------------------------------------------- 18, 20, 21, 22

*Lanny J. Davis & Assocs. LLC v. Republic of Equatorial Guinea,*
    962 F. Supp. 2d 152, 165 (D.D.C. 2013-------------------------------------------------------23

*Metropolitan Life Insurance Company*, Plaintiff, v. Gail Felicia Thrower-Clarke, Defendant.,
    No. 1:17-CV-2552 (KBJ), 2018 WL 5122288, at *5 (D.D.C. Oct. 22, 2018)  -------------------23

*Miminco, LLC v. Democratic Republic of the Congo,*
    79 F. Supp. 3d 213,  218 (D.D.C. 2013)-----------------------------------------------------22

*Odhiambo v. Republic of Kenya,*
    764 F.3d 31, 40 (D.C. Cir. 2014)----------------------------------------------------- 10, 11

*Republic of Argentina v. Weltover, Inc.,*
    504 U.S. 607, 619 (1992)------------------------------------------------------------- 11, 12

*Rimkus v. Islamic Republic of Iran,*
    750 F. Supp. 2d 163, 171 (D.D.C. 2010)-----------------------------------------------------13

*Walker Intern Holdings Inc. v. Republic of Congo,*
    395 F.3d 229, 234 (5th Cir. 2004)------------------------------------------------------------ 9

*Washington Inv. Partners of Delaware, LLC v. Sec. House,*
    K.S.C.C., 28 A.3d 566, 582 (D.C. 2011)-----------------------------------------------------19

*World Wide Minerals, Ltd. v. Republic of Kazakhstan,*
    296 F.3d 1154, 1162 n.3 (D.C. Cir. 2002) ----------------------------------------------------- 6

STATUTES

D.C. Code § 15-108 ------------------------------------------------------------------------- 21, 22

D.C. Code Ann. § 15-361 ----------------------------------------------------------------------12

D.C. Code Ann. § 15-363 ----------------------------------------------------------------------14

D.C. Code Ann. § 15-363(a)-----------------------------------------------------------14, 15, 16

D.C. Code Ann. § 15-363(a)(1) ----------------------------------------------------------------14

D.C. Code Ann. § 15-363(a)(2) ----------------------------------------------------------------14

D.C. Code Ann. § 15-363(b)---------------------------------------------------------------- 14, 15

D.C. Code Ann. § 15-364 ------------------------------------------------------------------ 14, 16

D.C. Code Ann. § 15-364(a)---------------------------------------------------------------- 15, 18

D.C. Code Ann. § 15-364(b)---------------------------------------------------------------- 15, 16

D.C. Code Ann. § 15-364(c)---------------------------------------------------------------------15

D.C. Code Ann. § 15-364(c)(1) ----------------------------------------------------------------16

D.C. Code Ann. § 15-364(c)(2) ----------------------------------------------------------------17

D.C. Code Ann. § 15-364(c)(3) ----------------------------------------------------------------17

D.C. Code Ann. § 15-364(c)(4) ----------------------------------------------------------------17

D.C. Code Ann. § 15-364(c)(5) ----------------------------------------------------------------17

D.C. Code Ann. § 15-364(c)(6) ----------------------------------------------------------------17

D.C. Code Ann. § 15-364(c)(7) ----------------------------------------------------------------17

D.C. Code Ann. § 15-364(c)(8) ----------------------------------------------------------------17

D.C. Code Ann. § 15-364(d)---------------------------------------------------------------------15

D.C. Code Ann. § 15-366(a)---------------------------------------------------------------------12

D.C. Code Ann. § 15-367 ----------------------------------------------------------------------13

28 U.S.C. § 1330(a) ------------------------------------------------------------------------------------ 5

28 U.S.C. § 1330(b) -----------------------------------------------------------------------------------12

28 U.S.C. § 1391(f)(4) --------------------------------------------------------------------------------12

28 U.S.C. § 1603(a) ------------------------------------------------------------------------------------ 5

28 U.S.C. § 1605 ---------------------------------------------------------------------------------------- 5

28 U.S.C. § 1605(a) ------------------------------------------------------------------------------------ 6

28 U.S.C. § 1605(a)(1) ------------------------------------------------------------------------------ 6, 9

28 U.S.C. § 1605(a)(2) ------------------------------------------------------------------------------9, 12

28 U.S.C. § 1606 ---------------------------------------------------------------------------------------- 5

28 U.S.C. § 1607 ---------------------------------------------------------------------------------------- 5

28 U.S.C. § 1608(a)(3) ------------------------------------------------------------------------------ 4, 5

28 U.S.C. § 1608(d) --------------------------------------------------------------------------------- 2, 4

28 U.S.C. § 1961(a) -----------------------------------------------------------------------------------22

<u>RULES</u>

Fed. R. Civ. P. 54(d) ---------------------------------------------------------------------------------23

Fed. R. Civ. P. 54(d)(1) -----------------------------------------------------------------------------23

Fed. R. Civ. P. 55(b)(2) -----------------------------------------------------------------------------13

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MOHAMMAD HILMI NASSIF &
PARTNERS, owner of the tradename Trust
World Wide Corp.,

        Plaintiff,

v.

REPUBLIC OF IRAQ and MINISTRY OF
INDUSTRY & MINERALS of the REPUBLIC
OF IRAQ,

        Defendants.

No. 1:17-cv-02193

Judge Ketanji Brown Jackson

---

## MEMORANDUM OF LAW IN SUPPORT OF
## MOHAMMAD HILMI NASSIF & PARTNERS' MOTION FOR
## ENTRY OF FINAL JUDGMENT BY DEFAULT AGAINST DEFENDANTS

Plaintiff Mohammad Hilmi Nassif & Partners, owner of the tradename Trust World Wide

Corp. ("Plaintiff"), by and through its attorneys, KERKONIAN DAJANI LLC, submits this

Memorandum of Law in Support of its Motion for Entry of Final Judgment by Default against

Defendants.  Plaintiff seeks full recognition of a foreign money judgment, and the entry of final

judgment against defendants Republic of Iraq ("Iraq") and the Ministry of Industry & Minerals –

Republic of Iraq ("Ministry") (collectively "Defendants"), in an amount that includes: (a) the

principal amount of the foreign money judgment of $53,000,000 (FIFTY-THREE MILLION

DOLLARS); (b) legal interest at the rate of 9.0% from April 15, 2010, as explicitly awarded in the

Jordanian Judgment, which shall be no less than $40,940,910 (FORTY MILLION NINE

HUNDRED FORTY THOUSAND NINE HUNDRED AND TEN DOLLARS); (c) post-judgment

interest from the date of this Court's entry of final judgment; and (d) costs in the amount of $958.34.

Each Defendant is in default.  Despite being properly served, each Defendant has failed to respond to the Complaint or otherwise appear before this Court within the time limit set forth for such response under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1608(d).  Given Defendants' default, and because Plaintiff has set forth facts demonstrating the liability of Defendants and the damages due to Plaintiff, a final default judgment in favor of Plaintiff and against Defendants is appropriate.

## PROCEDURAL SUMMARY

Prior to 1995, Plaintiff sold various products to Defendant Iraq.  Declaration of Mohammad Helmi ("Mohammad Nassif Decl."), attached hereto as Exhibit C, ¶ 4.  Defendants were to pay Plaintiff for such products but failed to do so, accumulating a commercial debt owed to Plaintiff ("Commercial Debt").  *Id.* ¶¶ 4, 5.  Plaintiff and Defendant Ministry negotiated a settlement of this Commercial Debt by which Defendants committed to export 450,000 tons of sulfur and 100,000 tons of urea ("Materials" or "Product"), which would be transited to a U.S. buyer, the purchase proceeds from which would go to Plaintiff to satisfy the Commercial Debt owed to Plaintiff by Defendants. Mohammad Nassif Decl. ¶ 5; Declaration of Abdel Naser Helmi Nassif ("Abdel Nassif Decl."), attached hereto as Exhibit D ¶ 5; Declaration of Declaration of Ibrahim Abu-Hijleh ("Hijleh Decl."), attached hereto as Exhibit E, ¶ 8; Declaration of Intesar Kamel Mustafa Ghazal ("Ghazal Decl."), attached hereto as Exhibit G, ¶ 5.  Defendants furnished a written commitment to export the Materials ("Export Commitment Letter" or "Letter"), and Plaintiff then located a New York buyer through the U.S. Embassy in Amman, Jordan, arranged the required logistics and waited for Defendants to export the Product. Abdel Nassif Decl. ¶¶ 6-16 and Ex. D-1; Mohammad

2

Nassif Decl. ¶¶ 6, 7 and Ex. C-1; Ghazal Decl. ¶¶ 6, 7 and Ex. G-1; Hijleh Decl. ¶¶ 7-15 and Ex. E-2.  Defendants failed to export the Materials.  Mohammad Nassif Decl. ¶ 8; Abdel Nassif Decl. ¶ 17; Ghazal Decl. ¶ 8; Hijleh Decl. ¶ 16.

**A.   Legal Proceedings in the Hashemite Kingdom of Jordan.**

In 2010, Plaintiff initiated legal proceedings against Defendants in the Hashemite Kingdom of Jordan ("Jordan"), in the Amman Court of First Instance, seeking a money judgment for damages incurred as a result of Defendants' failure to fulfill their obligation to export the Materials. *See* Decision in the Amman Court of First Instance, in the Hashemite Kingdom of Jordan, Suit No. 2010/2879 (the "Jordanian Judgment") (ECF No. 1-2) at 9; Declaration of Ashraf Abdel-Majid Jrayed Al-Harasis ("Harasis Decl."), attached hereto as Exhibit A, ¶¶ 3; Declaration of Abdel Razaq H. A. Melhem, Esq. ("Melhem Decl."), attached hereto as Exhibit B, ¶ 3; Mohammad Nassif Decl. ¶ 21; Abdel Nassif Decl. ¶ 19; Ghazal Decl. ¶ 17.

After proceedings in the Amman Court of First Instance—including interlocutory appeals and trial—the Jordanian court entered money judgment in favor of Plaintiff and against Defendants, jointly and severally, on September 6, 2015.  The Jordanian tribunal held:

1. The Defendants shall jointly and severally pay the Plaintiff an amount of USD$ fifty three million or an equivalent amount in Jordanian Dinars on the payment date.

2. The Defendants shall bear the fees, expenses, lawyer remuneration of 500 dinars and legal interest as of the date of claim on 15.04.2010 until the settlement is made in full.

ECF No. 1-2 at 15.  Defendants had 30 days in which to appeal the decision. Harasis Decl. ¶ 8 and Ex. A-2; Melhem Decl. ¶ 8 and Ex. B-2.  Defendants did not appeal and, as such, on October 7, 2015, the Jordanian Judgment became final and enforceable. Harasis Decl. ¶ 8 and Ex. A-2; Melhem Decl. ¶ 8 and Ex. B-2; ECF No. 1-2 at 16.

Defendants did not pay, and have not paid, any amount toward the Jordanian Judgment. Mohammad Nassif Decl. ¶ 24; Harasis Decl. ¶ 12; Melhem Decl. ¶ 12; Abdel Nassif Decl. ¶ 20; Ghazal Decl. ¶ 18.  On December 17, 2015, the Jordan Ministry of Justice certified that the total amount of the Jordanian Judgment still outstanding on such date, with accrued legal interest, was 56,767,533.423 Jordanian Dinars. *See* ECF No. 1-3; Harasis Decl. ¶ 10 and Ex. A-3; Melhem Decl. ¶ 10 and Ex. B-3; Mohammad Nassif Decl. ¶ 22 at Ex. C-3.  On July 23, 2018, the Jordan Ministry of Justice certified that the total amount of the Jordanian Judgment still outstanding on such date, with accrued legal interest, was 65,559,779.293 Jordanian Dinars. Harasis Decl. ¶ 11 and Ex. A-4; Melhem Decl. ¶ 11 and Ex. B-4; Mohammad Nassif Decl. ¶ 23 at Ex. C-4.  The total amount of the Jordanian Judgment remains unpaid. Mohammad Nassif Decl. ¶ 24; Harasis Decl. ¶ 12; Melhem Decl. ¶ 12; Abdel Nassif Decl. ¶ 20; Ghazal Decl. ¶ 18.

**B.     Legal Proceedings Before This Court.**

On October 23, 2017, Plaintiff filed this action seeking recognition of the foreign country money judgment. ECF No. 1 ¶¶ 20-22.  In December 2017, Plaintiff delivered copies of the Summonses, Complaint, Notices of Suit, and Arabic translations of such documents to the Clerk of Court as required by 28 U.S.C. § 1608(a)(3) for service upon Iraq and upon the Ministry, respectively. *See* Declaration of Elizabeth Al-Dajani ("Al-Dajani Decl."), attached hereto as Exhibit I, ¶¶ 6, 7.  The Clerk filed a Certificate of Mailing on December 13, 2017 (ECF No. 9-1), indicating that the service packages had been sent via DHL to each of the Defendants, attaching the DHL waybills for both same.

Plaintiff filed the proof of service on Iraq on December 22, 2017, showing that the service package sent to Iraq was signed for on December 18, 2017 (ECF No. 10).  Plaintiff filed the proof of service on the Ministry on January 19, 2018, showing that the service package sent to the

Ministry was signed for on January 4, 2018 (ECF No. 11).  Iraq's 60-day deadline for responding to the Complaint was February 18, 2018.  28 U.S.C. § 1608(d).  The Ministry's deadline was March 4, 2018. *Id*.  Those two dates have passed, and neither Defendant has responded to the Complaint or entered an appearance of any kind in this action.

On April 3, 2018, the Clerk entered default in favor of Plaintiff and against both Iraq (ECF No. 14) and the Ministry (ECF No. 15).  Plaintiff's counsel then filed Requests for Foreign Mailing for such entered defaults for each Defendant (ECF Nos. 17 and 18, the "Entries of Default") in May 2018. *See* Al-Dajani Decl. ¶ 11.  Plaintiff's counsel also delivered copies of the Entries of Default, along with Arabic translations thereof, to the Clerk of Court, as required by 28 U.S.C. § 1608(a)(3), for service upon Iraq and the Ministry, respectively. *Id*.  According to the Certificate of Mailing (ECF No. 20) and the Airway Bill (ECF No. 20-1), the Clerks' Entries of Default were sent to Defendants via DHL on May 24, 2018. Al-Dajani Decl.  ¶¶ 12, 13.

## JURISDICTION AND VENUE

Jurisdiction in this matter is governed exclusively by the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1330(a).  The FSIA provides that "[t]he district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief *in personam* with respect to which the foreign state is not entitled to immunity either under sections 1605–1607 of this title or under any applicable international agreement." *Id*.  Pursuant to the FSIA, the Court has subject matter jurisdiction over a foreign state where there is no immunity and, by virtue of the same, has personal jurisdiction where service was proper. *Id*.

Both Defendant Iraq and Defendant Ministry are "foreign state[s]" for the purposes of the FSIA. 28 U.S.C. § 1603(a) ("A 'foreign state' . . . includes a political subdivision of a foreign

state[.]").  Accordingly, and provided Defendants are not entitled to immunity under 28 U.S.C. § 1605-1607 or by international agreement, the Court has subject matter jurisdiction. 28 U.S.C. § 1330(a).

Neither Iraq nor the Ministry is entitled to any immunity here.  Both the waiver exception and the commercial activity exception to the FSIA apply under the facts in this case.  As such, this Court has jurisdiction over Defendants.

A.      **Defendants Have Waived Sovereign Immunity.**

Under 28 U.S.C. § 1605(a), foreign states are not immune from the jurisdiction of the courts of the United States in cases "in which the foreign state has waived its immunity either explicitly or by implication[.]"  28 U.S.C. § 1605(a)(1).  Defendants have waived sovereign immunity here.

Notably, there is no requirement that such waiver contain an actual reference to the United States or to a U.S. jurisdiction to meet the requirements of waiver under Section 1605(a)(1) of the FSIA.  *Capital Ventures International v. Republic of Argentina,* 552 F.3d 289, 294 (2nd Cir. 2009). "There can be explicit waivers without reference to the United States, as the waiver of immunity in 'any court' [] illustrates." *Id.* at 294-295.  Explicit waiver to jurisdiction in the courts of the United States exists where the language of waiver refers to "any" court. *Id.*; *see also World Wide Minerals, Ltd. v. Republic of Kazakhstan,* 296 F.3d 1154, 1162 n.3 (D.C. Cir. 2002) (an "express waiver[] of sovereign immunity" from jurisdiction in the United States exists where the language in the management agreement stated that "[i]n respect of any arbitration or legal action or proceedings arising out of or in connection with this Agreement, [the Kazakhstan State Committee] hereby irrevocably agrees not to claim and hereby irrevocably waives immunity" ***even though the language did not mention the United States or any U.S. jurisdiction specifically***).  A foreign sovereign's waiver of immunity from the jurisdiction in "any court"—***even without***

**_mention of the United States specifically_**—is sufficient to constitute explicit waiver under 28 U.S.C. § 1605(a)(1).

Defendant Iraq waived sovereign immunity.   On or about September 2003, Ahmad Chalabi, the then President of Iraq, met with an envoy of Plaintiff at the President's villa in Baghdad, Iraq to discuss the Export Commitment Letter and Defendants' obligation to Plaintiff thereunder. Hijleh Decl. ¶¶ 19-24.   President Chalabi read the Letter and "confirmed that it was indeed an unconditional undertaking and that it was a valid commercial obligation of the Republic of Iraq." *Id.* ¶ 25.   He assured Plaintiff's envoy that there would be a new budget in three months' time and that the obligation to Plaintiff would be included in such budget and would be resolved. *Id.*   Plaintiff's envoy informed President Chalabi that "if it was not solved, [Plaintiff] would have the right to sue." *Id.* ¶ 26.   President Chalabi responded that he "agreed that it was [Plaintiff's] right to sue and that there was no limitation in the Letter requiring [Plaintiff] to sue in Iraq.   In fact, [President Chalabi] stated that the Letter was a valid, unconditional obligation and that **_it could be enforced against Iraq anywhere_**[.]" *Id.* (emphasis added).

The Ministry made representations to Plaintiff squarely consistent with those of President Chalabi—in some instances, even **_instructing_** Plaintiff to sue Defendants outside of Iraq as to the obligation and, in others, **_specifically mentioning the United States_**.   *See* Mohammad Nassif Decl. ¶¶ 10, 14 ("The Minister [of Industry and Minerals, Adnan Al-Ani,] said that Plaintiff had the right to sue Iraq on the Letter, that it had the right to sue Iraq **_anywhere_** on this obligation and that Iraq would not object to being sued **_anywhere_**. . . . [T]he Minister expressly informed [] that, if [Plaintiff] was to sue, [Plaintiff] should not sue in Iraq, should stay out of the Arab states and should sue elsewhere.") (emphasis added); Declaration of Saad Mijbil ("Mijbil Decl."), attached hereto as Exhibit F, ¶¶ 5, 7 and 8 ("Mr. Shonia [the Economic Counsel for the Ministry of Industry

and Minerals of the Republic of Iraq] . . . stated that [Plaintiff] had the right to sue Iraq ***anywhere*** to enforce its rights under the Letter, whether in the Middle East, Europe or the ***United States***[]" and that "Iraq and the Ministry would have no defense to any such lawsuit by [Plaintiff].") (emphasis added); Mijbil Decl. ¶¶ 10, 11 ("[T]he Minister of Industry and Minerals of the Republic of Iraq, Fawzi Franco Hariri, . . . said that [Plaintiff] may sue Iraq and the Ministry ***anywhere*** it wants—including in the Middle East, Europe or the ***United States***—and that, when [Plaintiff] had the judgment, Iraq would pay.") (emphasis added).

The response of the subsequent Minister, Ahmad Al Karbouli, to the inquiries of Plaintiff's authorized representative regarding the official procedure to resolve Defendants' obligations in the Letter is likewise telling:

> Mr. Karbouli explained that the official procedure was that Iraq would not release any money unless the claimant has a court order. I asked Mr. Karbouli where he would like a court order from: whether a country in the Middle East, Europe ***or the United States***. He responded that the Company may sue Iraq and the Ministry ***anywhere*** it would like, that Iraq would not and could not dispute the lawsuit at all and then, when the Company obtained the court order, the Company should present the court order to Iraq and then Iraq would release the funds. . . . [I]n fact, Mr. Karbouli actually explained to me the official procedure, including how the Company should sue Iraq and the Ministry in ***any country***[.]"

Mijbil Decl. ¶¶ 13-15 (emphasis added). Mr. Karbouli explained that the official procedure with respect to the Export Commitment Letter was that Plaintiff should sue Defendants "in any country", that Defendants would not dispute the same and that, upon presentation of the court order, Iraq would release the funds. *Id*. Where the language of waiver clearly and unambiguously waives immunity in "***any*** court", the "language satisfies the FSIA's requirement of an 'explicit' waiver." *Capital Ventures,* 552 F.3d at 294. Defendants fully intended to waive immunity from

jurisdiction in the courts of any country with respect to the obligations contained in the Export Commitment Letter.

Defendants' intent to waive sovereign immunity as to this matter ***anywhere*** is evidenced by more than the clear and unambiguous statements of the President and Ministers—***it is corroborated by the actual conduct of Defendants***.  Defendants were sued on the obligations contained in the Export Commitment Letter in Jordan—***and they did not raise sovereign immunity*** in the litigation of the underlying matter in Jordan.  The Jordanian Ministry of Justice stated in no uncertain terms: "Ministry of Industry and Minerals /Republic of Iraq-Baghdad . . . did not solicit any sovereign immunity defense whatsoever during the case hearing." Harasis Decl. at Ex. A-2; Melhem Decl. at Ex. B-2; *see also* Harasis Decl. ¶ 5 ("Neither the Republic of Iraq nor the Ministry of Industry & Minerals – Republic of Iraq raised any sovereign immunity defense whatsoever during the Jordanian Case."); Melhem Decl. ¶ 5.  Defendants' own conduct corroborates their waiver of sovereign immunity to jurisdiction anywhere.

The purpose of the waiver analysis is to ensure that the waiver of sovereign immunity was not inadvertent. *Walker Intern Holdings Inc. v. Republic of Congo,* 395 F.3d 229, 234 (5th Cir. 2004).  Here, there was no inadvertence whatsoever: Defendants intended to waive sovereign immunity and subject themselves to jurisdiction anywhere with respect to their obligations under the Export Commitment Letter—and they acted consistently with such intention when they did not raise sovereign immunity as a defense to the underlying litigation in Jordan.  Defendants have explicitly waived sovereign immunity to jurisdiction in any court and, as such, jurisdiction is proper in this Court. 28 U.S.C. § 1605(a)(1).

      **B.**    **The Commercial Activity Exception Applies.**

Even if Defendants had not waived sovereign immunity (which they did), Defendants' conduct falls directly within the commercial activity exception to immunity embodied in Section 1605(a)(2) of the FSIA.  This exception provides, in clause three, that foreign states are not immune when "the action is based . . . upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2).

Here, the Materials that Defendants promised to export were destined to a U.S. buyer. Abdel Nassif Decl. ¶¶ 11-16; Mohammad Nassif Decl. ¶¶ 7-9.  The terms of the negotiated settlement of the Commercial Debt owed to Plaintiff by Defendants provided that Iraq would export 450,000 tons sulfur and 100,000 tons urea, which would be transited through the port in Aqaba to a United States buyer, the purchase proceeds of which would belong to the Company to pay off the Commercial Debt owed by Defendants to Plaintiff.  Abdel Nassif Decl. ¶ 5; Mohammad Nassif Decl. ¶ 5; Hijleh Decl. ¶ 8; Ghazal Decl. ¶ 5.  In fact, the New York buyer itself was furnished to Plaintiff by the United States Embassy in Jordan. Abdel Nassif Decl. ¶¶ 8-9. Moreover, by virtue of the sheer volume of the transaction, the Materials could only have been sold into the U.S. market. *Id.* ¶ 5.  All of the parties knew, at the time of the furnishing of the Export Commitment Letter, that the Materials would be sold to a U.S. buyer. Abdel Nassif Decl. ¶ 5; Mohammad Nassif Decl. ¶ 5; Hijleh Decl. ¶¶ 8, 11, 13.

The evidence establishes that, upon receiving Defendants' commitment to export the Materials, Plaintiff met with the United States Embassy in Amman, Jordan to identify a U.S. buyer for the Materials; identified U.S. buyers from a list that the U.S. Embassy provided Plaintiff; and secured a commitment to purchase the Materials from a U.S. company in New York.  Abdel Nassif Decl. ¶¶ 7-9.  Plaintiff negotiated financial terms for the full shipment of the Materials to the New

York buyer. *Id.* ¶ 11.  Plaintiff negotiated the 5% performance bond requested by the New York buyer down to 2%, and then obtained assurances for the issuance of the 2% performance bond from Jordan-Gulf Bank. *Id.*; Hijleh Decl. ¶ 14.  Plaintiff then secured insurance and confirmed a company to undertake the inspection at Aqaba before the Materials were loaded on a shipping vessel to the United States. Abdel Nassif Decl. ¶ 14.

"For purposes of clause three of the FSIA commercial activity exception, breaching a contract that establishes or ***necessarily contemplates*** the United States as a place of performance causes a direct effect in the United States[.]" *Odhiambo v. Republic of Kenya,* 764 F.3d 31, 40 (D.C. Cir. 2014) (emphasis added)*; see also De Csepel v. Republic of Hungary,* 714 F.3d 591, 600-601 (D.C. Cir. 2013) (Hungary's knowledge that the heirs lived in the United States meant that it was ***necessarily contemplated*** that it would ultimately return the artwork to the United States).  Defendants here knew that the Materials would be delivered to the United States at the time they negotiated the terms to settle Defendants' Commercial Debt to Plaintiff; in fact, delivery to a U.S. buyer—the only type of buyer that could and would actually pay for such quantity of Materials—was precisely the purpose of the negotiated settlement to pay off the Commercial Debt. Abdel Nassif Decl. ¶ 5; Mohammad Nassif Decl. ¶ 5; Hijleh Decl. ¶ 8; *see Odhiambo,* 764 F.3d at 40; *De Csepel,* 714 F.3d at 600-601.

Defendants' failure to export the Materials had a "direct effect" in the United States as the Materials were not delivered to the buyer in New York. Abdel Nassif Decl. ¶¶ 14, 17.  In *Republic of Argentina v. Weltover, Inc.,* 504 U.S. 607, 619 (1992), the Supreme Court held the rescheduling of maturity bonds by a foreign state caused a "direct effect" in the United States because "[m]oney that was supposed to have been delivered to a New York bank for deposit was not forthcoming." Similarly, here, the Product that was supposed to have been delivered to a New York buyer was

11

not forthcoming. Mohammad Nassif Decl. ¶ 8; Abdel Nassif Decl. ¶ 17; Ghazal Decl. ¶ 8. Defendants knew that the Materials were destined to a U.S. buyer, as that was the very purpose of the resolution achieved between Plaintiff and Defendants: the Materials would be exported by Defendants, transited to a U.S. buyer and the purchase proceeds from which would satisfy Defendants' Commercial Debt to Plaintiff. Abdel Nassif Decl. ¶ 5; Mohammad Nassif Decl. ¶ 5; Hijleh Decl. ¶ 8.

Finally, the fact that Plaintiff is a foreign company with no other connection to the United States is absolutely immaterial to the analysis: "We reject [the] suggestion that the 'direct effect' requirement cannot be satisfied where the plaintiffs are all foreign corporations with no other connections to the United States. . . . [T]he FSIA permits a foreign corporation to sue a foreign sovereign in the courts of the United States, provided the substantive requirements of the Act are satisfied[.]" *Weltover,* 504 U.S. at 619 (internal citations and quotations marks omitted). The actions of Defendants outside the territory of the United States, in connection with their commercial activity involving the Materials, caused a direct effect in the United States. 28 U.S.C. § 1605(a)(2). Accordingly, and even if Defendants did not waive sovereign immunity in this matter (which they did), the Court has subject matter jurisdiction pursuant to clause three of the FSIA's commercial activity exception.

## C.    The Court Has Personal Jurisdiction Over Defendants.

The Court also has personal jurisdiction over Defendants. Pursuant to the FSIA, district courts have personal jurisdiction over every claim over which they have subject matter jurisdiction "where service has also been made under section 1608 of this title." *See* 28 U.S.C. § 1330(b). Both Defendants were served pursuant to Section 1608. ECF Nos. 10, 11. This Court has personal jurisdiction over Defendants.

D.      **Venue is Proper in This District.**

Finally, venue is proper in this district.  Pursuant to 28 U.S.C. § 1391(f)(4), a civil action may be brought "in the United States District Court for the District of Columbia if the action is brought against a foreign state or political subdivision thereof."  This action is brought against a foreign state and a political subdivision thereof.  Venue is proper in the United States District Court for the District of Columbia.

## ARGUMENT

Plaintiff seeks full recognition of the Jordanian Judgment under the District of Columbia's Uniform Foreign-Country Money Judgments Recognition Act of 2011 ("Recognition Act" or "Act"), D.C. Code Ann. § 15-361 *et seq*. *See id.* § 15-366(a) ("If recognition of a foreign-country judgment is sought as an original matter, the issue of recognition shall be raised by filing an action seeking recognition of the foreign-country judgment.").  Provided the Jordanian Judgment is entitled to recognition, and to the extent it grants a sum of money, it shall be conclusive between the parties with full faith and credit and enforceable in the same manner as a judgment rendered in the District of Columbia. *Id.* § 15-367; *Commissions Import Export S.A. v. Republic of Congo,* 118 F. Supp. 3d 220, 224 (D.C. Cir. 2015).

The Jordanian Judgment is entitled to recognition under the Act, and Plaintiff is entitled to a default judgment for the full money judgment awarded therein, including legal interest from April 15, 2010. ECF No. 1-2; *Fanning v. C&L Serv. Corp.,* 297 F.R.D. 162, 166 (D.D.C. 2013) (Jackson, K.B, District Judge.) ("A court has the power to enter default judgment when a defendant fails to defend its case appropriately or otherwise engages in dilatory tactics.") (internal quotation marks omitted).  The Jordanian Judgment meets the recognition requirements under the Act, and

Plaintiff's damages are sufficiently evidenced to allow this Court to enter default judgment in the amount requested. Fed. R. Civ. P. 55(b)(2).

Finally, the fact that this matter implicates the FSIA does not heighten the default judgment analysis. "[An] FSIA default winner must prove damages in the same manner and to the same extent as any other default winner." *Hill v. Republic of Iraq*, 328 F.3d 680, 683 (D.C. Cir. 2003) (internal quotation marks omitted). Importantly, this standard does ***not*** impose an additional duty on the Court to hold a hearing or make explicit factual findings. *Commercial Bank of Kuwait v. Rafidain Bank*, 15 F.3d 238, 242 (2d Cir. 1994). Plaintiff can show its entitlement to damages by documentary evidence or affidavits. *Rimkus v. Islamic Republic of Iran,* 750 F. Supp. 2d 163, 171 (D.D.C. 2010); *see also Bricklayers & Trowel Trades Int'l Pension Fund v. Miami Valley Masonry, Inc.*, 288 F. Supp. 3d 257, 259 (D.D.C. 2018) (entitlement to damages on default can be shown "using detailed affidavits or documentary evidence on which the court may rely."). Importantly, the Court should not speculate as to what other evidence may have been presented by Defendants—it must consider ***only*** the evidence actually presented. *Hill*, 328 F.3d at 685 ("the district court must confine itself to the evidence actually presented ***and not speculate about what other evidence might have been brought to the court's attention in a two-sided proceeding***.") (emphasis added).

## I.    THE JORDANIAN JUDGMENT IS ENTITLED TO RECOGNITION

The Jordanian Judgment is entitled to recognition because it meets the applicability requirements of section 15-363 of the Recognition Act and because there is no basis for nonrecognition under section 15-364. The Jordanian Judgment is entitled to full recognition.

### A.    The Jordanian Judgment Satisfies the Act's Applicability Requirements.

The applicability requirements for recognition under the Recognition Act are embodied in sections 15-363(a) and (b).  First, the foreign judgment must grant a recovery of a sum of money.  Recognition Act § 15-363(a)(1).  The Jordanian Judgment here clearly grants recovery of a sum of money.  *See* ECF No. 1-2 at 15.  Second, the judgment must be final, conclusive and enforceable.  Recognition Act § 15-363(a)(2).  The Jordanian Judgment here is final, conclusive and enforceable. ECF No. 1-2 at 16 ("The Verdict is final."); Melhem Decl. ¶ 9 at Ex. B-2 ("The defendants did not appeal the relevant decision during the legal term, which expired on 7/Oct./2015.  Therefore, the relevant decision acquired the absolute degree and became ***final and enforceable***.") (emphasis added).

Finally, a foreign judgment entitled to recognition cannot be one involving taxes, fines, penalties or a domestic relations matter. Recognition Act § 15-363(b).  The Jordanian Judgment involves a commercial entitlement and represents the liquidated value of materials. ECF No. 1-2 at 9 ("Plaintiff wrote to the Ministry of Finance of Iraq on 30.05.2005 requesting it to pay its entitlements of fifty three million dollar[s] as prices for the materials supplied to those companies. . . . [The Ministry of Finance] acknowledges the Plaintiff's entitlements of USD$ fifty three million[.]"); *id.* at 11 ("The value of sulfur and urea and Plaintiff's subsequent claims from the Ministry of Finance were estimated on the agreement date to be USA$ fifty three million.").  The Jordanian Judgment does not involve taxes, fines, penalties or domestic relations matters. Recognition Act § 15-363(b).

Accordingly, the applicability requirements for recognition of the Jordanian Judgment under sections 15-363(a) and (b) of the Recognition Act are satisfied.

**B.      There Is No Basis for Nonrecognition of the Jordanian Judgment.**

Since the applicability requirements are met, the Court **_must_** recognize the Jordanian Judgment unless Defendants establish that a ground for nonrecognition under section 15-364(b) or (c) exists. Recognition Act § 15-364(a) ("Except as otherwise provided in subsections (b) and (c) of this section, a court of the District of Columbia **_shall_** recognize a foreign-country judgment to which this subchapter applies.") (emphasis added).

      1.      Defendants have not met their statutory burden to demonstrate any grounds for nonrecognition.

The burden for establishing grounds for nonrecognition is statutorily set—and it is Defendants' burden. Recognition Act § 15-364(d) ("A party resisting recognition of a foreign-country judgment has the burden of establishing that a ground of nonrecognition states in subsection (b) or (c) of this section exists."). Defendants have failed to appear in this case. As such, Defendants have not introduced any evidence establishing any ground for nonrecognition.

Moreover, the Court cannot speculate as to what evidence Defendants _would have_ introduced if Defendants _would have_ appeared in this proceeding: "the district court must confine itself to the evidence actually presented and not speculate about what other evidence might have been brought to the court's attention in a two-sided proceeding." _See Hill_, 328 F.3d at 685. Defendants have not met their statutory burden to establish any basis for nonrecognition of the Jordanian Judgment. Recognition Act § 15-364(d).

      2.      The record evidence does not establish any ground for nonrecognition— whether mandatory or discretionary.

The Recognition Act states that a foreign judgment meeting the applicability requirements under section 15-363(a) shall be recognized except as otherwise provided in subsections (b) and (c) of section 15-364. Subsection (b) enumerates the bases for mandatory nonrecognition, and

subsection (c) lists the discretionary bases.  Neither mandatory grounds nor discretionary grounds for nonrecognition are supported by the record evidence here.

Section 15-364(b) of the Recognition Act provides that a court "may not recognize a foreign country judgment" where (1) the judgment was rendered in a judicial system that does not provide impartial tribunals or procedures compatible with the requirements of due process; (2) the foreign court did not have personal jurisdiction over the defendant; or (3) the foreign court did not have subject matter jurisdiction.  Recognition Act § 15-364(b).  These grounds simply are not implicated here.  The Jordanian judicial system provides impartial tribunals and respects the requirements of due process.  In fact, United States courts have noted the due process and general fairness guarantees provided by Jordanian tribunals.  *See e.g. Ahmad v. Khalil*, 2013 WL 3388641, at *6-7 (N.Y. Sup. Ct. 2013).  Tellingly, there is no hint of impartiality here; in fact, the actual proceedings demonstrate the key requirements of due process: notice, the opportunity to be heard, present evidence including expert testimony and even the right of appeal.  ECF No. 1-2 at 2-16.  Finally, the Jordanian court had personal jurisdiction over Defendants as well as subject matter jurisdiction when deciding the case.  *See* ECF No. 1-2 at 4; Harasis Decl. ¶¶ 4-5; Melhem Decl. ¶¶ 4-5.  There are no mandatory grounds barring recognition of the Jordanian Judgment.

There are no discretionary grounds either.  Defendants were each provided legal notice to the proceedings.  Recognition Act § 15-364(c)(1); ECF No. 1-2 at 4 ("Although there is no need to send a judicial warning, the Plaintiff informed the Defendants through the Notary Public of Amman under the Judicial Warning numbered 2010/12813 dated 15.04.2001 [sic] with respect to the Suit[.]"); Harasis Decl. ¶ 4; Melhem Decl. ¶ 4.  The Jordanian Judgment was not obtained by fraud that deprived Defendants of an opportunity to present a case (§ 15-364(c)(2)), it was not obtained in a manner raising doubt about the integrity of the court (§ 15-364(c)(7)), and it did not

proceed in a seriously inconvenient forum (§ 15-364(c)(6)) or in a manner incompatible with the requirements of due process (§ 15-364(c)(8)).  To the contrary, the Jordanian Judgment reflects reasoned analysis, opportunity to be heard, meaningful consideration of arguments, positions and evidence presented by the parties in the commercial matter (including expert testimony) as well as the right to an appeal and even the exercise of the right to an interlocutory appeal. ECF No. 1-2 at 8-15 (reasoned analysis); *id.* at 3-5, 12 (opportunity to be heard); *id.* at 13-15 (meaningful consideration of arguments); *id.* at 3-5, 7, 9, 11, 12 (positions and evidence presented by the parties in the commercial matter, including expert testimony); *id.* at 15 (the right to an appeal and the exercise of the right to an interlocutory appeal).  Finally, there is no evidence that the Jordanian Judgment contravenes United States or District of Columbia public policy at all, let alone to any degree of repugnancy (§ 15-364(c)(3)), that the proceedings were contrary to an agreement between the parties that the dispute would be determined by proceedings other than in the foreign court (§ 15-364(c)(5)), or that the judgment conflicts with another final and conclusive judgment (§ 15-364(c)(4)).  The Jordanian Judgment was a reasoned legal analysis of a commercial matter based on documentary evidence and witness testimony presented by the parties and consistent with the law of obligations and contract.

The Court's analysis in this regard should focus on whether basic fairness existed in the Jordanian procedures—not whether such procedures are identical to those of the United States. *Gold Reserve Inc. v. Bolivarian Republic of Venezuela,* 146 F. Supp. 3d 112, 127–28 (D.D.C. 2015) (a fundamentally fair hearing means adequate notice, a hearing on the evidence, and an impartial decision by the arbitrator).  The Seventh Circuit, in considering the reasoning of the drafters of the Uniform Act (upon which the D.C. Recognition Act is based), explained that "the Uniform Act does not require that the procedures employed by the foreign tribunal be identical to

those employed in American courts.  The statute simply requires that the procedures be '*compatible* with the requirements of due process of law.'" *Ingersoll Milling Machine Co., v. Granger,* 833 F.2d 680, 687 (7th Cir. 1987) (emphasis added).  The Jordanian proceedings—complete with notice, the opportunity to be heard, the chance to present evidence and even the right of appeal, including interlocutory appeal—demonstrated fundamental fairness.  There are no grounds in the record warranting discretionary nonrecognition. *Hill*, 328 F.3d at 685 (the Court must confine itself to the evidence before it and not speculate as to what could have been presented in a two-sided proceeding).

The Jordanian Judgment meets the applicability requirements of the Recognition Act. Defendants have not met the burden of establishing—nor does the record evidence support—any grounds for nonrecognition.  The Jordanian Judgment is entitled to full recognition. Recognition Act § 15-364(a).

## II.   PLAINTIFF IS ENTITLED TO A DEFAULT JUDGMENT IN THE FULL AMOUNT OF THE JORDANIAN JUDGMENT, INCLUDING LEGAL INTEREST

The Jordanian tribunal awarded Plaintiff $53 million in addition to "fees, expenses, lawyer remuneration of 500 dinars and legal interest as of the date of claim on 15.04.2010 until the settlement is made in full." ECF No. 1-2 at 15.  Plaintiff is entitled to recognition in this full amount, as such award is evidenced by the Jordanian Judgment itself as well as corroborating evidence provided by Plaintiff, including sworn declarations and the certifications of the Jordanian Ministry of Justice. *Boland v. Providence Constr. Corp.*, 304 F.R.D. 31, 36 (D.D.C. 2014) (Jackson, K.B, District Judge) ("plaintiff must prove its entitlement to the amount of monetary damages requested using detailed affidavits or documentary evidence on which the court may rely") (internal quotation marks omitted).  The court may conduct a hearing regarding the scope of damages, but it is ***not required*** to do so if a basis for the damages is specified in the default

19

judgment. *Id.*  The basis for the damages here is clear, and the judgment amount itself is certain and easily calculable.

### A.     The Principal Amount of Damages Is Certain.

The principal amount awarded under the Jordanian Judgment is stated on its face: $53 million. ECF No. 1-2 at 15 ("The Defendants shall jointly and severally pay the Plaintiff an amount of USD$ fifty three million").  The Jordanian Judgment created an immediate and enforceable right to collect on the debt.  *Id.; see also CapitalKeys, LLC v. Democratic Republic of Congo,* 278 F. Supp. 3d 265, 275 (D.D.C. 2017) (an amount is liquidated if it is an "easily ascertainable sum certain" in addition to a size known to both parties and an immediate, judicially enforceable right); *see also Washington Inv. Partners of Delaware, LLC v. Sec. House,* K.S.C.C., 28 A.3d 566, 582 (D.C. 2011) (where both parties knew how much was paid in fees under an agreement between them, the award was considered "sum certain").  The record evidence—the Jordanian Judgment itself—establishes the principal amount of $53 million as a sum certain, one recognized by the Jordanian tribunal as a judicially enforceable right. ECF No. 1-2 at 15.

The evidence further establishes that the Jordanian tribunal had liquidated the amount owed to Plaintiff to this sum certain after proceedings on the merits—proceedings in which arguments, evidence and expert testimony was considered to establish the value of the damages. ECF No. 1-2 at 11 ("The value of sulfur and urea and Plaintiff's subsequent claims from the Ministry of Finance were estimated on the agreement date to be USA$ fifty three million."); *id.* at 7 ("The Court decided to have the technical experience conducted by the expert Sami Nemir Salem Al Nebulsi who was advised of his mission to estimate the prices of urea and sulfur by ton. . . . the expert's report of six pages was provided and added to the facts of the Suit"); *id.* at 9 ("Plaintiff wrote to the Ministry of Finance of Iraq on 30.05.2005 requesting it to pay its entitlements of fifty

three million dollar[s] as prices for the materials supplied to those companies. . . . [The Ministry of Finance] acknowledges the Plaintiff's entitlements of USD$ fifty three million[.]").

The Jordanian Judgment establishes the principal damages amount with certainty, and the underlying analysis by the Jordanian tribunal provides comfort that the sum certain was derived substantively from documentary evidence and expert witness testimony. ECF No. 1-2 at 3-15. The evidence is clear and uncontroverted that the principal amount awarded in the Jordanian Judgment was $53,000,000. *Id.* at 15. Plaintiff is entitled to this amount as part of the final default judgment amount.

**B.      The Evidentiary Basis for Legal Interest from April 15, 2010 Is Likewise Clear and the Amount of Legal Interest Is Easily Ascertainable.**

Plaintiff is also entitled to legal interest. The Jordanian Judgment explicitly awarded Plaintiff "legal interest as of the date of claim on 15.04.2010 until the settlement is made in full." ECF No. 1-2 at 15. The default judgment in this case must include legal interest from April 15, 2010, as awarded by the Jordanian Judgment: such legal interest is clear, easily ascertainable and supported by the record evidence.

Full recognition of the Jordanian Judgment requires recognition of the legal interest awarded. *See Ingersoll,* 833 F.2d at 691 ("The Belgian judgment includes prejudgment interest. Full recognition and enforcement of that judgment includes an award of prejudgment interest."); *Hunt v. BP Expl. Co. (Libya),* 492 F. Supp. 885, 901 (N.D. Tex. 1980) (English judgment allowing prejudgment interest enforceable in Texas even if prejudgment interest was inappropriate under Texas law); *see also Continental Transfer Technique Ltd. v. Fed. Gov't of Nigeria,* 932 F. Supp. 2d 153, 163-4 (D.D.C. 2013) (Plaintiff is entitled to interest "consistent with the underlying [] award"). Full recognition of the Jordanian Judgment must include the legal interest as explicitly provided therein. ECF No. 1-2.

The legal interest in Jordan is 9.0% per year. Melhem Decl. ¶ 9 and Ex. B-2; Harasis Decl. ¶ 9 and Ex. A-2.  The fact that the Jordanian Judgment accrues legal interest is evidenced on the face of the decision, of course; and the fact that it does so at a rate of 9.0% annually was stated explicitly by the Amman Court of First Instance: "After issuance of the Jordanian court judgment, under Jordanian law; which ruled to commit the defendants, severally and jointly, to pay (53,000,000 US$), fees and expenses as well as (500 JDs) being advocacy fees ***and legal interest at (9% annually), since date of claim until complete settlement.***" Melhem Decl. at Ex. B-2 (emphasis added).  In fact, the Ministry has made this clear in successive certifications of the amount due under the Jordanian Judgment.  It calculated and certified that the Jordanian Judgment had accrued JOD 19,182,801.123 (or $27,094,351.87)[1] in legal interest, as of December 17, 2015. Harasis Decl. ¶ 10 at Ex. A-3; Melhem Decl. ¶ 10 and Ex. B-3; Mohammad Nassif Decl. ¶ 22 at Ex. C-3.  It calculated and certified that the Jordanian Judgment had accrued JOD 27,975,046.933 (or $39,512,778.15)[2] in legal interest, as of July 23, 2018. Harasis Decl. ¶ 11 at Ex. A-4; Melhem Decl. ¶ 11 and Ex. B-4; Mohammad Nassif Decl. ¶ 23 at Ex. C-4.  The calculations confirm the application of a legal rate of interest at 9.0%. Declaration of Dr. Leona L. Mirza ("Mirza Decl."), attached hereto as Exhibit H, ¶¶ 6, 7.

Where a foreign judgment includes prejudgment interest, full recognition and enforcement of that judgment includes an award of prejudgment interest—and even if prejudgment interest may

---

[1] Using the conversion rate from Jordanian Dinars to U.S. Dollars on or about September 6, 2015. Declaration of Leona Mirza ("Mirza Decl."), attached hereto as Exhibit H, ¶¶ 3, 4; *G. Geerlings Export B.V. v. Van Hoekelen Greenhouses, Inc.,* 2017 WL 2692001, at *6 (M.D. Penn. June 21, 2017) ("In an action or recognition of a foreign judgment, generally the date of breach for the purposes of converting the foreign judgment into United States dollars is the date on which the foreign judgment was entered.") (internal citations and quotations marks omitted).

[2] Mirza Decl. ¶¶ 3, 5.

be inappropriate under the laws of the forum state. *Ingersoll,* 833 F.2d at 691.[3]  Plaintiff here is entitled to legal interest at 9.0% from the date of its claim on April 15, 2010, as awarded by the Jordanian tribunal and, indeed, as subsequently calculated and certified by the Jordanian Ministry of Justice. ECF No. 1-2 at 15; Harasis Decl. ¶¶ 10, 11 at Ex. A-3 and Ex. A-4; Melhem Decl. ¶¶ 10, 11 and Ex. B-3 and Ex. B-4.

Defendants have not paid any amount on the Jordanian Judgment. Mohammad Nassif Decl. ¶ 24; Abdel Nassif Decl. ¶ 20; Ghazal Decl. ¶ 18; Harasis Decl. ¶ 12; Melhem Decl. ¶ 12.  As of November 15, 2018, the accrued legal interest amounts to $40,940,910. ECF 1-2 at 15; Mirza Decl. ¶ 8.

## C.   Plaintiff Is Entitled to Post-Judgment Interest.

Plaintiff is entitled to post-judgment interest on the final judgment entered by the Court in this case.   Post-judgment interest must be imposed on "any money judgment in a civil case

---

[3] That said, an award of prejudgment interest here is ***not*** inconsistent with D.C. law.  Rather, it is consistent.  A judgment for a plaintiff "'shall include" prejudgment interest if: (1) the action is one to recover a liquidated debt and (2) interest is payable on that debt by contract or by law or usage. D.C. Code § 15-108.  "Where both statutory conditions are met, prejudgment interest is mandatory." *Dist. Cablevision Ltd. P'ship v. Bassin,* 828 A.2d 714, 731 (D.C. 2003).  Both statutory conditions are met here.  First, the action was one to recover a liquidated debt: "A liquidated debt is one which at the time it arose, was an easily ascertainable sum certain." *Dist. Cablevision,* 828 AS.2d at 731 (internal quotation marks and modifications omitted).  The Jordanian tribunal specifically noted that it is "evident for the Court through the letter of the Ministry of Finance numbered 9897 dated 24.07.2005 issued by the Accounting Department General Manager at the Ministry, the latter sent to the Ministry of Industry & Minerals of Iraq under which it acknowledges the Plaintiff′s entitlements of USD$ fifty three million, (Exhibit 7) of the Plaintiff′s evidences. ECF No. 1-2 at 9.  In fact, "[t]he value of sulfur and urea and the Plaintiff′s subsequent claims from the Ministry of Finance were estimated on the agreement date to be USA$ fifty three million." ECF No. 1-2 at 11.  Finally, the Jordanian tribunal also determined the specific date on which that $53 million was due: "Because the First Defendant refrains from paying the Plaintiff′s entitlements, the latter sent a judicial notice number 2010/12813 dated 15.04.2010 claiming the entitlements incurred by the former.  Although the First Defendant received the judicial notice via the diplomatic channels, it still refrains from paying, which made the Plaintiff file this Suit for the reasons and grounds stated in its Suit brief." *Id.* at 10.  Moreover, the second prong of the test for mandatory prejudgment interest is also met here: the Jordanian Judgment specifically awards pre-judgment interest.  Courts consider interest to be payable by "law or usage" where a competent court has entered judgment. D.C. Code § 15-108; *Ingersoll Milling Machine Co v. Grainger,* 833 F.2d 680, 691 (7th Cir. 1987).  Here, the Jordanian Judgment specifically states that "[t]he Defendants shall bear . . . legal interest as of the date of claim on 15.04.2010 until the settlement is made in full." ECF No. 1-2 at 15.  The Jordanian Judgment contemplates interest from the date of the claim until the judgment is paid in full. *Id.*

recovered in a district court[.]" 28 U.S.C. § 1961(a). Since the Court must recognize the judgment as if it were its own judgment, it "must order that post-judgment interest be paid on the full award amount." *Miminco, LLC v. Democratic Republic of the Congo*, 79 F. Supp. 3d 213, 218 (D.D.C. 2015). Here, the amount owed to Plaintiff is definite and certain and specifically provides that interest attaches to the sum owed. ECF No. 1-2 at 15. Again, this is consistent with the Jordanian Judgment which provides that Plaintiff is entitled to "legal interest as of the date of claim on 15.04.2010 ***until the settlement is made in full***." ECF No. 1-2 at 15 (emphasis added).

The evidence is clear that Defendant has never been paid ***any*** amount to Plaintiff on the Jordanian Judgment. Mohammad Nassif Decl. ¶ 24; Abdel Nassif Decl. ¶ 20; Ghazal Decl. ¶ 18. The legal interest awarded is 9.0%. ECF No. 1-3. Plaintiff is entitled to post-judgment interest at 9.0% from the date of entry of this Court's judgment in this matter.[4]

### D.     Plaintiff Is Entitled to Costs.

"Under Federal Rule of Civil Procedure 54(d), the prevailing party is presumptively entitled to costs," and this presumption extends to a party who prevails due to the entry of default judgment. *Lanny J. Davis & Assocs. LLC v. Republic of Equatorial Guinea*, 962 F. Supp. 2d 152, 165 (D.D.C. 2013) (allowing costs under Federal Rule of Civil Procedure 54(d)(1) when granting a motion for default judgment); *see e.g., Metropolitan Life Insurance Company, Plaintiff, v. Gail Felicia Thrower-Clarke, Defendant,* No. 1:17-CV-2552 (KBJ), 2018 WL 5122288, at *5 (D.D.C. Oct. 22, 2018); *Deptula v. Glosson*, No. CV 13-582 CRC/DAR, 2014 WL 12675256, at *4 (D.D.C. Oct. 23, 2014), *report and recommendation adopted,* No. 1:13-CV-00582 (CRC), 2014 WL 12675257 (D.D.C. Nov. 11, 2014). Accordingly, Plaintiff should be awarded the costs in the

---

[4] Plaintiff does not seek compound interest; it respectfully requests that the award of legal interest sought in Section II(B) run from April 15, 2010 through the date of final judgment by this Court and that the legal interest sought in Section II(C) run from the date of final judgment by this Court.

amount of $958.34, incurred by Plaintiff in the matter filed before this Court. *See* Al-Dajani Decl. ¶ 14.

## CONCLUSION

**Wherefore**, Plaintiff requests that this Court enter judgment in favor of Plaintiff and against Defendants (a) in the amount of $53 million (FIFTY-THREE MILLION DOLLARS); (b) interest at the rate of 9.0% from April 15, 2010 through the date of this Court's judgment award in this case, which shall be no less than $40,940,910 (FORTY MILLION NINE HUNDRED FORTY THOUSAND NINE HUNDRED AND TEN DOLLARS); (c) post-judgment interest at the rate of 9.0% from the date of this Court's entry of judgment; (d) costs in the amount of $958.34; and (e) any and all other relief that this Court deems just and proper.

Dated: November 19, 2018

> MOHAMMAD HILMI NASSIF & PARTNERS, owner of the tradename Trust World Wide Corp.,
>
> /s/ Karnig S. Kerkonian
> _____
>
> Karnig S. Kerkonian (D.D.C. Bar No. IL0040)
> Elizabeth M. Al-Dajani (D.D.C. Bar No. IL0039)
> KERKONIAN DAJANI LLC
> 1555 Sherman Avenue, Suite 344
> Evanston, Illinois 60201
> Tel. (312) 416-6180 Fax (312) 604-7815
> kkerkonian@kerkoniandajani.com
> ealdajani@kerkoniandajani.com
>
> *Attorneys for Plaintiff*